UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
FLORENTINO TULA,

Plaintiff,

-against-

ELITE AUTO MAINTENANCE INC., *and* ROBERT RUBINSHTEYN,

Defendants.

-------------------------------------------------------- X

**<u>REPORT & RECOMMENDATION</u>**

25-CV-3117 (NRM)(SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

Plaintiff Florentino Tula brings this action against Defendants Elite Auto Maintenance Inc. ("Elite") and Robert Rubinshteyn, seeking damages under the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") and the New York Labor Law, N.Y. Lab. Law § 650 ("NYLL"). Presently before the undersigned, on referral from the Honorable Nina R. Morrison, United States District Judge, is Plaintiff's motion for default judgment against Defendant Elite. For the reasons set forth below, the undersigned respectfully recommends the Court grant Plaintiff's motion in substantial part.[1]

## FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken from the Complaint, Plaintiff's motion for default judgment, and the attachments filed in support of Plaintiff's motion. Defendant Elite owned and operated an auto maintenance and body shop business located at 2435 McDonald Avenue, Brooklyn, New York, under the name Elite Auto Maintenance. (*See* Complaint ("Compl."), Dkt. No. 1, ¶ 4.)

[1] As detailed below, a portion of Plaintiff's FLSA claim is untimely, so the undersigned recommends that the Court deny the motion as to that portion of the FLSA claim. *See infra* Discussion III.A. Further, as detailed below, Plaintiff fails to establish a viable claim under the NYLL Wage Theft Prevention Act. *See infra* Discussion III.D.iii. Thus, the undersigned recommends that the Court deny the motion as to that claim as well.

Plaintiff alleges he was employed by Defendant Elite to perform automobile painting work from June 2020 to August 30, 2023 ("Period 1") and again from approximately June 15, 2024, to February 2, 2025 ("Period 2"). (*See id.*) Plaintiff alleges his work "did not involve executive or administrative responsibilities." (*Id.* ¶ 16.)

During Period 1, Plaintiff alleges he worked seven days per week, from 9:00 a.m. to 6:00 p.m., amounting to 63 hours per week. (*See id.* ¶ 18.) Plaintiff alleges he was compensated at $250 per day during this Period no matter how many hours he worked each week. (*See id.*; *see also* Affidavit of Michael Samuel, Esq. in Support of Motion for Default Judgment ("Samuel Decl."), Dkt. No. 26 ¶ 15.)

During Period 2, Plaintiff alleges he worked six days per week, Monday through Saturday, from 9:00 a.m. to 6:00 p.m., amounting to 54 hours per week. (*See* Compl. ¶¶ 20–21.) He alleges he did not receive overtime compensation for this entire Period, and for 52 full workdays of this Period, he also says he was not paid his $250 regular wage. (*See* Samuel Decl. ¶ 15; *see also id.* Ex. 4).

Throughout both periods, Plaintiff alleges he did not receive paystubs, wage statements, nor any written notices about his regular or overtime pay rates. (*See id.* ¶ 17). He also says he was paid in cash throughout both Periods and was never asked to sign any notice acknowledging his regular rates of pay. (*See* Compl. ¶¶ 30–31.) Plaintiff alleges Defendant Elite also did not keep track of Plaintiff's exact time worked nor provide a method for Plaintiff to keep track of his time himself. (*See id.* ¶¶ 32–33.)

Plaintiff initiated this action on June 4, 2025. He seeks (i) compensation for unpaid overtime work; (ii) compensation for unpaid wages for work performed without pay; and (iii) liquidated damages for Defendant Elite's alleged willful violations of the FLSA. (*See id.*

pp. 1–2.) Plaintiff also seeks (i) back wages for unpaid overtime work; (ii) compensation for unpaid wages for work performed without pay; (iii) liquidated damages; and (iv) statutory damages for Defendant Elite's violations of the NYLL and the Wage Theft Prevention Act. (*See id.*)

Defendant Elite was served with the Summons and Complaint on July 3, 2025 through an authorized agent at the Office of the New York Secretary of State. (*See* Summons, Dkt. No. 7.) Despite that service, Defendant Elite never appeared in this matter nor responded to the Complaint in any way. On September 16, 2025, Plaintiff obtained a certificate of default against Defendant Elite. (*See* Clerk's Entry of Default, Dkt. No. 13.) At the same time, Plaintiff voluntarily dismissed his claims against Robert Rubinshteyn. (*See* Memorandum of Law in Support of Plaintiff's Motion for Default Judgment ("Pl's. Mem."), Dkt. No. 27 p. 1; *see also* Notice of Voluntary Dismissal, Dkt. No. 15; Dkt. Order dated Sep. 18, 2025.) Plaintiff then filed this motion for default judgment against Defendant Elite on February 8, 2026. (*See* Motion for Default Judgment ("Mot."), Dkt. No. 25.)

**LEGAL STANDARD**

A plaintiff seeking default judgment not for a sum certain must follow a two-step process under Federal Rule of Civil Procedure 55. *See, e.g.*, *Gaskin v. Brooklyn Suya Corp.*, 22-CV-5648, 2023 WL 9232962, at *2 (E.D.N.Y. Oct. 26, 2023). The plaintiff must first seek a certificate of default. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Second, "after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the

Court may, on a plaintiff's motion, enter a default judgment." *Gaskin*, 2023 WL 9232962, at *2 (citing Fed. R. Civ. P. 55(b)(2)).

Courts do not grant motions for default judgment "unless the party making that motion adheres to certain local and individual rules." *Innovative Sports Mgmt., Inc. v. Triangle Eatery & Bar, LLC*, 21-CV-6809, 2022 WL 18151927, at *7 (E.D.N.Y. Dec. 14, 2022), *report and recommendation adopted*, 2023 WL 130835 (E.D.N.Y. Jan. 9, 2023). Among other things, Local Civil Rule 55.2(b) requires that a party seeking default judgment apply to the court and attach the clerk's certificate of default, a copy of the unanswered claim, and a proposed form of default judgment form. *See* Local Civ. R. 55.2(b). Local Civil Rule 55.2(c) also requires that all papers submitted under Local Civil Rule 55.2(b) be mailed to the defaulting party at their last known address, with proof of mailing filed with the court. *See* Local Civ. R. 55.2(c).

A "default is an admission of all well-pleaded allegations against the defaulting party." *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014). Accordingly, a party's motion for default judgment "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013). Therefore, the Court must ensure "[P]laintiff's allegations, [when accepted as true], establish the defendant's liability as a matter of law." *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 137 (2d Cir. 2011).

On a motion for default judgment, "a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages." *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 237 (E.D.N.Y. 2024) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

However, "a pleading's legal conclusions are not assumed to be true." *Chen v. JP Standard Constr. Corp.*, 14-CV-1086, 2016 WL 2909966 at *4 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, 14-CV-1086, 2016 WL 2758272 (E.D.N.Y. May 12, 2016). Instead, "the factual allegations in the complaint must themselves be sufficient to establish a right to relief." *Chen*, 2016 WL 2909966 at *4. Further, "the plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, 18-CV-6476, 2020 WL 5519200 at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sep. 14, 2020).

A trial court has "sound discretion" to grant or deny a motion for a default judgment because "it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 2011). However, in guiding the exercise of that discretion, the Second Circuit has cautioned that a default judgment should be granted only if there is an underlying meritorious claim; "the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

## DISCUSSION

Applying these well-established principles to this motion, the undersigned first addresses whether service was proper, then whether the circumstances surrounding default justify the entry of a default judgment, and finally, whether, presuming the allegations in the complaint are true, Defendant Elite is liable to Plaintiff under the FLSA and NYLL for the claims asserted.

### I. Service on Defendant Elite & Local Rule 55.2 Procedural Requirements

The undersigned finds Plaintiff properly served Defendant Elite with the summons and complaint and met the other requirements of Local Rule 55.2. A court must consider "whether

Plaintiffs have shown that Defendants had notice about the action and an opportunity to defend against it." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 30 (E.D.N.Y. 2015). Federal Rule of Civil Procedure 4(h) requires a domestic corporation to be served either "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment by law to receive service of process." Fed. R. Civ. P. 4(h). The plaintiff must also obtain a certificate of default and certify whether the defendant is in military service, minor, or incompetent. *See* Local Civ. R. 55.2(A)(1).

Here, Plaintiff properly served Defendant Elite with the Summons and Complaint on July 3, 2025 through an authorized agent in the Office of the Secretary of State of the State of New York. (*See* Samuel Decl. ¶ 7; Ex. 2.) Plaintiff's counsel also mailed Defendant Elite copies of its request for a certificate of default to Defendant Elite's actual place of business and provided the Court with proof of such mailing. (*See* Samuel Decl. ¶ 9; Ex. 3–7.) Plaintiff's request for a certificate of default certified that Defendant Elite is not in military service, nor a minor or incompetent person. (*See* Request for Certificate of Default, Dkt. No. 11.) On September 16, 2025, after these efforts, the Clerk of Court issued a certificate of default against Defendant Elite. (*See* Clerk's Entry of Default, Dkt. No. 13.) Plaintiff also certified that he served his motion for default judgment and all supporting documents on Defendant Elite. (*See* Certificate of Service, Dkt. No. 28.) Thus, the undersigned finds Defendant Elite was properly served and provided with adequate notice of the Complaint and the default against it, and Plaintiff complied with the Local Civil Rules.

## II. Propriety of a Default Judgment

Before addressing the substance of Plaintiff's FLSA and NYLL claims, the undersigned considers the other factors relevant to finding default judgment appropriate. Those factors include: (i) whether the defendant's default was willful; (ii) whether defendant presents a meritorious defense; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgement was set aside. *See Enron*, 10 F.3d at 96.

The first two factors weigh in favor of finding default judgment appropriate. As to the first factor, "a defendant's failure to respond to the complaint is sufficient to demonstrate willfulness." *Fermin*, 93 F. Supp. 3d at 32. As to the second factor, a defense is not meritorious if there is no presentation of evidence in defense of the claims. *See SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998). Here, both factors weigh in favor of default. Defendant Elite never entered any appearance, filed an answer, nor moved with respect to the Complaint, nor has Defendant Elite presented any evidence in defense of the claims. Accordingly, in the absence of a response to the Complaint, the undersigned finds Defendant Elite's default was willful, and, in the absence of the presentation of evidence in defense of the claims, the undersigned finds there is no meritorious defense. *See, e.g.*, *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").

The third factor also weighs in favor of finding default judgment appropriate. A plaintiff is prejudiced if a defendant's failure to respond prevents them from obtaining relief under the law. *See, e.g.*, *Fermin,* 93 F. Supp. 3d at 32 (citing *Flanagan v. N. Star Concrete Constr., Inc.*, 13-CV-2300, 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014). Here, Plaintiff's ability to obtain relief

under the FLSA or NYLL flows from this proceeding, and Defendant's nonparticipation, if tolerated, would be dispositive in preventing Plaintiff from obtaining relief. As such, Defendant Elite's failure to respond hampers Plaintiff's ability to obtain relief he is entitled to under the law. *See, e.g.*, *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 124 (E.D.N.Y. 2011) ("Denying this motion would be prejudicial to Plaintiffs 'as there are no additional steps available to secure relief in this Court.'") (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,* 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)). Thus, the undersigned finds this third factor weighs in favor of finding default judgment appropriate.

Because all three factors are satisfied, as long as Plaintiff's Complaint sets forth meritorious claims for relief under the FLSA and NYLL, the undersigned recommends the Court issue a default judgment.

## III. Sufficiency of Plaintiff's FLSA & NYLL Claims

### A. Statute of Limitations

As a first step in addressing the sufficiency of Plaintiff's claims, the undersigned evaluates whether his request for relief is brought within the time permitted in the applicable statute of limitations. Generally, "[t]he limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). When a defendant defaults, "the violation is considered willful and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, 09-CV-133, 2010 WL 2927398, at *33 (E.D.N.Y. June 24, 2010)). The limitations period for FLSA claims begins to run when the employee commences work for the employer. *See Jimenez*, 744 F. Supp. 3d at 245.

Here, as discussed earlier, Defendant Elite's default was willful, so the three-year limitations period applies. *See supra* Discussion II. Plaintiff commenced the action on June 4, 2025, so he may recover for any FLSA claims that accrued as of three years before—*i.e.*, June 4, 2022. In this case, Plaintiff seeks relief pursuant to the FLSA for both Period 1 and Period 2. But, a portion of Period 1—from June 15, 2020 to June 3, 2022—falls outside the three-year limitation period and, thus, would be time-barred. Accordingly, the undersigned recommends considering a default judgment on the FLSA claims only as to the timely portion of Period 1, from June 4, 2022 through August 30, 2023, and all of Period 2.

Plaintiff's NYLL claims do not share this limitation. The NYLL limitations period is six years. *See* N.Y.L.L. §§ 198(3), 663(3). Accordingly, Plaintiff may potentially recover for any NYLL claims that accrued as of June 4, 2019—six years after he filed his Complaint. As Plaintiff's first period of employment began in June 2020, all his claims fall within the six-year period and, thus, are timely brought under the NYLL.

**B. FLSA Coverage**

To establish liability under the FLSA, a plaintiff must prove the following: (i) the defendant is an employer subject to the FLSA; (ii) the plaintiff is an employee within the meaning of the FLSA; and (iii) the employment relationship is not exempted from the FLSA. *See Payamps v. M & M Convenience Deli & Grocery Corp.*, 16-CV-4895, 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018). The undersigned evaluates whether Plaintiff has established each of these elements in turn.

**i. Employers Subject to the FLSA**

The FLSA only applies to a qualifying employer, which includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

An employer is subject to the FLSA if (i) their employees are engaged in commerce, or (ii) the employer is an enterprise engaged in commerce. *See id.* §§ 206, 207. Plaintiff's factual allegations rely on the second prong. To be an enterprise engaged in commerce, the employer must have "(a) an annual gross sales volume of at least $500,000", and "(b) employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person." *Brito v. Marina's Bakery Corp.*, 19-CV-828, 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (citing 29 U.S.C. §§ 203(s)(1)(A)(i)–(ii)).

Plaintiff alleges Defendant Elite is an enterprise that "has been and continued to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA." (Compl. ¶ 5.) Plaintiff also alleges Defendant Elite "has used goods and materials produce in interstate commerce and has employed at least two individuals who handled such goods and materials," and has had a gross revenue more than $500,000 throughout the period in question. (*Id.* ¶¶ 6–7.) While these allegations assert a conclusion without providing reasoning as to how Defendant Elite engaged in commerce or what goods were produced, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

While Plaintiff fails to provide specific examples of goods or materials that were involved in interstate commerce, "multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, 20-CV-4671, 2022 WL 17820084, at *3 (E.D.N.Y. Sep. 8, 2022). Similarly, Defendant Elite likely could not have maintained an auto maintenance and body

shop business without goods and materials from out-of-state. *See Rosa v. M and M LA Solution Flat Fixed Inc.,* 23-CV-1212, 2024 WL 4131905, at *6 (E.D.N.Y. Sep. 10, 2024) ("Courts have found that materials used at auto repair shops[], which frequently handle automobiles, repair tools, tires, gasoline, and oil, likely originate outside New York."). Combined with Plaintiff's allegations that Defendant Elite's revenue was over $500,000, it is reasonable for the undersigned to find, notwithstanding the conclusory nature of Plaintiff's allegations, that Plaintiff is employed by Defendant Elite under the FLSA's enterprise coverage standard.

**ii. Employees Covered by the FLSA**

Under the FLSA, an employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). There are two types of employees covered by the FLSA: "(1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita v. Alkor Cap. Corp*., 19-CV-1504, 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *report and recommendation adopted*, 2021 WL 4463483 (E.D.N.Y. Sep. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)).

Plaintiff's factual allegations state he was employed by Defendant Elite across both Periods to perform automobile painting work for Defendant Elite's auto maintenance and body shop which, as established above, is an enterprise engaged in commerce. *See supra* Discussion III.B.i; (*see also* Compl. ¶ 15). During this period, Plaintiff's work was performed in the normal course of Defendant Elite's business, and Plaintiff alleges he worked for Defendant Elite on a full-time basis. (*See* Compl. ¶¶ 8, 9, 16.) Lastly, Plaintiff alleges his work was "integrated into the business of Defendant[]" and that Defendant Elite set his "work schedule and rate of pay." (*See id.* ¶¶ 16,

19.) Accordingly, the undersigned finds that, throughout both Periods in question, Plaintiff has sufficiently shown he was an employee within the meaning of the FLSA.

**iii. FLSA Exemptions**

The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements based on the actual duties performed. *See* 29 U.S.C. § 213(a)(1) (listing multiple exemptions). *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (discussing FLSA exemptions). While job title does not determine an employee's exempt status, the FLSA exemptions apply to those employees whose duties and salary fall within specific categories, such as an "executive, administrative, or professional capacity," or seasonal recreational workers and agricultural workers. *See* 29 U.S.C. § 213(a). Here, the undersigned finds Plaintiff's work as an automobile painter does not fall within one of the exempt employment exceptions under the FLSA. (*See* Compl. ¶ 16); *see also* 29 U.S.C. § 213(a)(1).

**C. NYLL Coverage**

To prevail on a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'" *Perry v. High Level Dev. Contracting & Sec. LLC*, 20-CV-2180, 2022 WL 1018791, at *7 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022) (quoting N.Y. Lab. Law § 190). Unlike the FLSA, "the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, 13-CV-4021, 2014 WL 4728287, at *6 (E.D.N.Y. Sep. 23, 2014). To determine whether this employment relationship exists, courts look to "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Meyer v. United States Tennis Ass'n,* 607 F. App'x 121, 122

(2d Cir. 2015). The factors relevant to this assessment are whether the worker "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009).

During Plaintiff's employment, Defendant Elite set Plaintiff's wages, work schedule, maintained his employment records and paid his compensation from the payroll. (*See* Compl. ⁋ 8.) These factors weigh in favor of finding Plaintiff and Defendant had an employment relationship with the meaning of the NYLL. Additionally, the undersigned has already found Defendant Elite was Plaintiff's employer within the meaning of the FLSA. *See supra* Discussion III.B. Thus, "because the NYLL's definition of 'employer' is coextensive with the FLSA's definition, . . . the undersigned finds Defendant Elite is Plaintiff's employer within the meaning of the NYLL," and Plaintiff qualifies for the NYLL's protections. *Perry*, 2022 WL 1018791, at *7 ((quoting *Fermin*, 93 F. Supp. 3d at 37).

**D. Compensation**

A plaintiff has the burden of proving they were improperly compensated for their work performed, as well as proving that the defendant had actual or constructive knowledge of work performed. *See Kim v. Kini LIC Corp.*, 806 F. Supp. 2d 277, 303 (E.D.N.Y. 2025). But when a defendant defaults, "the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate, as 'an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable.'" *Id.* at 363; *see also* 29 U.S.C. § 211(c).

Plaintiff seeks overtime compensation and unpaid wages pursuant to both the FLSA and NYLL. (*See* Pl's. Mem. p. 6.) He also seeks compensation under the Wage Theft Protection Act. (*See id.* pp. 8–10.) The undersigned addresses each in turn.

#### i. Plaintiff is Entitled to Overtime Compensation Pursuant to the FLSA & NYLL

The FLSA requires employers to pay overtime at a rate of one and one-half times the regular rate to any employee who works more than 40 hours in one workweek. *See Dejesus v. HF Management Services, LLC*, 726 F.3d 85, 86 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). To recover overtime pay, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). Similarly, the NYLL requires that for non-hospitality workers, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for hours worked in excess of 40 hours in one workweek. *Ochoa v. 5 Square Management*, 24-CV-7300, 2026 WL 796866, at *9 (E.D.N.Y. Mar. 23, 2026) (quoting 12 N.Y.C.R.R. § 142–2.2).

Plaintiff sufficiently alleges he worked more than 40 hours per week during both Periods. During Period 1, Plaintiff alleges he worked approximately 63 hours per week over the course of seven days, from 9:00 a.m. to 6:00 p.m. each day. (*See* Compl. ¶¶ 18–19.) During Period 2, Plaintiff alleges he worked approximately 54 hours per week over the course of six days, from 9:00 a.m. to 6:00 p.m. each day. (*See id.* ¶¶ 20–21.) However, Plaintiff cannot recover all damages under the FLSA for his first period of employment, because the statute of limitations prevents him from claiming damages that accrued before June 4, 2022. *See supra* Discussion III.A. Therefore, the undersigned recommends Plaintiff only be permitted to recover under the FLSA for unpaid overtime beginning or accruing after June 4, 2022. However, as noted below, since Plaintiff is allowed to recover for the entire period of employment under the NYLL, this limitation does not impact his ultimate recovery. *See infra* Discussion IV.

**ii. Plaintiff is Entitled to Unpaid Wages Pursuant to the FLSA & NYLL**

The FLSA requires that every "employer shall pay to each of his employees . . . not less than . . . $7.25 an hour." 29 U.S.C. § 206(a)(1)(C). Similarly, the NYLL requires employees to be paid at least the minimum $16.00 hourly wage for each hour they work. *See id.* § 652(1-a)(a). Plaintiff alleges Defendant Elite violated this requirement by failing to compensate Plaintiff at any amount for 52 full workdays during Period 2. *See id.* § 206(a)(1)(C); (*see also* Compl. ¶¶ 24–27). Plaintiff alleges Defendant Elite set his work schedule and compensation and was aware of the number of hours he was working and rate of compensation he received during this period. (*See* Compl. ¶¶ 27–29). Therefore, the undersigned finds Plaintiff has sufficiently established he is entitled to recover unpaid regular wage compensation pursuant to the FLSA and NYLL from approximately June 15, 2024 through December 31, 2024.

Additionally, "where a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, several courts have found that the failure to pay the promised rate is a violation of the NYLL where "a plaintiff can recover for unpaid 'straight' time at the agreed-upon rate, even if it exceeds the minimum wage." *Dacko v. Emek Renovation Corp.*, 24-CV-4018, 2025 WL 3451892, at *7 (E.D.N.Y. Sep. 30, 2025) (quoting *Cavalotti v. Daddyo's BBQ, Inc.*, 15-CV 6469, 2018 WL 5456654, at *13 (E.D.N.Y. Sep. 8, 2018)). Because Plaintiff's agreed-upon hourly rate of $27.78, calculated from the agreed-upon daily rate of $250, is greater than the NYLL minimum wage of $16.00 per hour, the undersigned finds Plaintiff should recover at the agreed-upon $27.78 hourly rate. (*See* Compl. ¶ 22; Pl's. Mem. p. 3.)

**iii. Plaintiff is Not Entitled to Compensation Pursuant to NYLL's Wage Theft Prevention Act**

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide employees a written wage notice within 10 business days of their first day of employment "in

writing in English and in the language identified by each employee as the primary language of such employee." NYLL § 195(a). The penalty for failing to do so is $50 for each workday that the violation occurs or continues to occur, not to exceed a total of $5,000. *See id.* § 198(1–b). The WTPA also requires employers to provide employees with wage statements for "every payment of wages" that contain dates of work, the rate of pay, and the gross and net wages paid. *Id.* § 195(3). The WTPA provides employees who have not received the required wage statements the ability to "recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." *Id.* § 198 (1–d).

To recover in any federal lawsuit, including for claims brought pursuant to the WTPA, a plaintiff must have Article III standing. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) ("Plaintiff must show some causal connection between the lack of accurate notices and the downstream harm"); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The requirements of Article III standing require a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ramirez v. Urion Construction LLC*, 674 F. Supp. 3d 42, 55 (S.D.N.Y. 2023) (quoting *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021)). A plaintiff bears the burden of alleging facts that affirmatively and plausibly indicate that plaintiff has standing to sue. *See id.* (citing *Hennessy by and through Hennessy v. Poetica Coffee Inc.*, 21-CV-5063, 2022 WL 4095557, at *2 (E.D.N.Y. Sep. 7, 2022)). The Second Circuit recently clarified that Article III standing can only be established for lack of wage notices under the NYLL where a plaintiff "show[s] some causal connection between the lack

of accurate notices and the downstream harm." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308, 311 (2d Cir. 2024).

In this case, even assuming that Defendant Elite failed to provide wage statements as alleged, the undersigned finds Plaintiff is not entitled to collect damages for those violations because Plaintiff does not sufficiently allege Article III standing. None of Plaintiff's factual allegations link any legally cognizable injury he experienced to Defendant Elite's failure to provide a wage notice and wage statements under the NYLL. He does nothing more than allege that the wage notice provision was violated. (*See* Compl. ¶ 57). This is not enough to establish standing. *See, e.g.*, *Perez v. E.P.E. Enterprise Corp.*, 22-CV-6353, 2024 WL 1632255, at *6 (E.D.N.Y. Apr. 15, 2024) ("[p]laintiff has not shown that he suffered a concrete injury resulting from [d]efendant's violations of the NYLL's wage statement and wage notice requirements," which resulted in the denial of the WTPA claim.); *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, 21-CV-2015, 2024 WL 1342739, at *1 (E.D.N.Y. Mar. 29, 2024) (holding that "[p]laintiff lacks standing to pursue his claims that [the defendant] violated the NYLL's wage notice and wage statement provisions because [p]laintiff had not adequately pleaded a tangible injury resulting from [the defendant's] failure to provide the required notices."); *Jones v. Mega Home & Linen, Inc.*, 22-CV-6010, 2024 WL 6986809, at *4 (E.D.N.Y. Sep. 27 2024) (holding that while the plaintiff was denied his statutory right to receive compensation information, which resulted him in receiving an underpayment of wages, a "statutory violation in and of itself does not necessarily amount to a concrete injury").

Plaintiff also states, in conclusory fashion, "Defendants' failure to provide Plaintiff with paystubs, wage statements and weekly records of his compensation and hours worked cause Plaintiff harm as a result of his not being informed of the lawful overtime rate he was entitled to

be paid" during his employment. (*See* Compl. ¶ 33). While Plaintiff's conclusory assertions were sufficient as to other aspects of his claims, they are not enough here, where Plaintiff bears the burden of establishing standing. A plaintiff who alleges some sort of "downstream consequence" causally linked to a statutory violation may have standing, but they need to put forward more than mere conclusory allegations. *Compare Rueda v. A & G Iron Works Corp*, 25-CV-1791, 2026 WL 183692, at *12–13 (E.D.N.Y. Jan. 23, 2026) (finding a concrete injury where Plaintiffs alleged lack of wage notices prevented them from verifying compensation and asserting their rights earlier) *and Yagui v. Republic Bar & Lounge Inc.*, 25-CV-2674, 2026 WL 1296762, at *13 (E.D.N.Y. May 12, 2026) (denying wage notice damages because there was no concrete injury causally linked to the missing statements). Here, the undersigned finds Plaintiff's conclusory allegation of harm does not suffice to meet his burden of establishing standing based on downstream consequences. Accordingly, as the undersigned finds Plaintiff lacks standing to bring a claim under the NYLL Wage Theft Prevention Act, the undersigned recommends that the Court deny the motion for a default judgment as to this claim.

## IV. Damages

As described above, the undersigned has found Plaintiff is entitled to a default judgment as to: (i) his claims for unpaid overtime pursuant to the NYLL for all of Period 1; (ii) his claims for unpaid overtime claims pursuant to the FLSA during Period 1 that are not time barred; and (ii) his claims for unpaid wages and overtime pursuant to the NYLL and FLSA for all of Period 2.[2] The undersigned now evaluates what damages that are owed to Plaintiff on these claims.

---

[2] Plaintiff's Complaint sought additional forms of relief, including a declaratory judgment that Defendant Elite's practices are unlawful under the FLSA and NYLL, an injunction against Defendant, punitive damages, and back pay. (*See* Compl. pp. 13–14.) But Plaintiff does not mention these categories of relief in its motion for default judgment. (*See* Pl's. Mem. pp. 6–12.) Accordingly, the Court finds these requests abandoned and does not address them here. *See, e.g.*,

Although a defendant may be liable under both the FLSA and NYLL, a plaintiff may not recover damages under both statutes for wages earned during the same period. Instead, recovery is limited to "the statute which provides the greatest amount of damages." *Brito v. Marina's Bakery Corp.*, 19-CV-828, 2022 WL 875099, at *9 (E.D.N.Y. Mar. 24, 2022). As described above, the undersigned finds Plaintiff is entitled to recover wages under both the NYLL and FLSA at the same rate of $27.78. *See supra* Discussion III.D.ii. Because the NYLL's statute of limitations allows Plaintiff to recover for a longer period than the FLSA, the NYLL provides a greater period of recovery at an equal or greater hourly rate of $27.78. *See supra* Discussion III.A. Therefore, the undersigned applies the NYLL for all damage calculations.

**A. Unpaid Regular Wage Compensation**

Although Plaintiff was paid a regular wage of $250 for most of Period 2, he alleges Defendant Elite failed to pay him those regular wages for 52 full workdays of Period 2 from June 15, 2024, through December 31, 2024. (*See* Compl. ¶ 24.). Based on Plaintiff's allegation that he worked six days per week during this time, the undersigned calculates that 52 full workdays divided by six-day work weeks would amount to 8.666666667 total weeks during that period in which Plaintiff was not compensated for the standard 40-hour work week. The NYLL requires that "employees must be paid at least the minimum hourly wage for each hour that they work," where "a plaintiff can recover for unpaid 'straight' time at the agreed-upon rate, even if it exceeds the minimum wage." *Agramonte v. Pineridge Commc'ns, Inc.*, 23-CV-9029, 2024 WL 5399233, at *6 (E.D.N.Y. Dec. 20, 2024) (citing NYLL § 652).

---

*State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in [its] brief, we consider those arguments abandoned.").

Dividing the daily rate of $250 over the course of nine hours per day, Plaintiff's regular hourly rate of pay amounts to $27.78 during this period, which is higher than the NYLL's $16.00 minimum wage. Therefore, the undersigned utilizes the higher of the two by adopting the expected hourly rate of pay of $27.78 throughout this Period. To calculate the regular wage compensation owed, the undersigned multiplies the expected hourly rate by 40 hours per week for the total number of weeks owed.

Plaintiff's own calculated damages for unpaid regular wage compensation are incorrect, as they calculated a total of $9,629.83 compared to the undersigned's calculation of $9,630.40. (*See* Samuel Decl. Ex. 5.) Applying the above formula, the undersigned respectfully recommends that Plaintiff be awarded unpaid regular wage compensation accrued during Period 2 amounting to **$9,630.40** ($1,111.20 expected pay per week × 8.666666667 weeks = $9,630.40).

*Table 1: Unpaid Regular Wage Compensation*

| **Dates** | **Number of Weeks (52 workdays ÷ 6 days of work per week)** | **Hours worked** | **Expected pay per day** | **Expected Pay per week ($250 × 6)** | **Expected Hourly Pay (expected pay per week ÷ hours worked)** | **Expected Pay per week for 40 hours** | **NYLL Regular Wage Compensation (expected pay per week for 40 hours × number of weeks)** |
|---|---|---|---|---|---|---|---|
| 6/15/24 – 12/31/24 | 8.666666667 | 54 | $250 | $1,500 | $27.78 | $1,111.20 | $9,630.40 |

### B. Unpaid Overtime Compensation

Under the NYLL, Plaintiffs are entitled to overtime compensation for all hours worked over 40 per week at a rate of one and a half times the greater of either their regular rate of pay or minimum wage. *See Perez Campos v. Quentin Mkt. Corp.*, 16-CV-5303, 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018). The NYLL's overtime requirements varied across both Periods of Plaintiff's employment. During Period 1, the NYLL required employers in New York City to "pay

to each of its employees for each hour worked in the city of New York a wage of no less than . . . $15.00 per hour on and after December 31, 2019." NYLL § 652(1)(a)(ii). For part of Period 2, from June 15, 2024, through December 31, 2024, the minimum wage set by the NYLL was $16.00 per hour. *Id.* § 652(1-a)(a). For the rest of Period 2, from January 1, 2025, through February 2, 2025, the NYLL set out a minimum wage of $16.50 per hour. *Id.* As described above, for all periods in question, Plaintiff was paid $27.78 per hour when accounting for total hours worked over the course of the week at a rate of $250 per day.

When a plaintiff is compensated above the minimum wage, "overtime compensation should be determined by multiplying [the] agreed upon wage rate by one and one-half." *Marvici v. Roche Facilities Maint. LLC*, 21-CV-4259, 2023 WL 5810500, at *7 (S.D.N.Y. Sep. 8, 2023), *report and recommendation adopted*, 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023). Because Plaintiff's rate of pay exceeded the NYLL minimum wage set out at each Period in question, the undersigned will multiply the regular rate of pay by one and one-half to calculate overtime compensation.

During both Periods in question, the undersigned finds Plaintiff has sufficiently alleged that he worked over 40 hours per week, which makes him eligible for overtime pay for each Period. Aside from eight weeks during Period 2 from June 15, 2024, through December 31, 2024, Plaintiff was compensated at a rate of $250 per day regardless of how many hours were worked. For those days, because a weekly amount was paid, "'the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate (minimum wage × 1.5) by the total number of overtime hours worked' per week and multiplying that product by the number of weeks during the relevant period." *Ochoa*, 2026 WL 796866, at *12 (quoting *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 377 (E.D.N.Y. 2022)). During Period 2 from June 15,

2024, through August 31, 2024, there were eight weeks in which Plaintiff sufficiently alleges he was not paid any salary—whether regular wages or overtime compensation. For those weeks in question, the undersigned will use the regular rate of pay at $27.78 and multiply that rate by hours worked each week in excess of 40 hours and then multiply by the number of weeks worked.

The undersigned finds Plaintiff's own calculated damages for unpaid overtime compensation are incorrect, as they calculated a total of $53,484.13 and $9,855.56 respectively, compared to the undersigned's calculation of $53,442.77 and $9,815.60. (*See* Samuel Decl. Ex. 5.) Applying the above formulas, the undersigned respectfully recommends Plaintiff be awarded unpaid overtime wages listed in Table 1 and 2, which amount to a total of **$63,258.37** ($53,442.77 unpaid overtime wages for Period 1 + $9, 815.60 unpaid overtime wages for Period 2 = $63,258.37).

*Table 2: Unpaid Overtime Wages for Period 1*

| **Dates** | **Number of Weeks** | **Hours of OT** | **Hourly Pay (over all hours worked – 63 per week)** | **OT rate missing (1.5 × Hourly Pay – Hourly Pay received)** | **OT per week (OT rate missing × hours of OT)** | **NYLL OT Compensation (OT per week × number of weeks)** |
|---|---|---|---|---|---|---|
| 6/15/20 – 12/31/20 | 28.57142857 | 23 | $27.78 | $13.89 | $319.47 | $9,127.71 |
| 1/1/21 – 12/31/21 | 52.14285714 | 23 | $27.78 | $13.89 | $319.47 | $16,658.08 |
| 1/1/22 – 12/31/22 | 52.14285714 | 23 | $27.78 | $13.89 | $319.47 | $16,658.08 |
| 1/1/23 – 8/30/23 | 34.42857142857 | 23 | $27.78 | $13.89 | $319.47 | $10,998.90 |
| Total OT for Period 1 | | | | | | $53,442.77 |

*Table 3: Unpaid Overtime Wages for Period 2*

| **Dates** | **Number of Weeks** | **Hours of OT** | **Hourly Pay (over all hours worked – 53 per week)** | **OT rate missing (1.5 × Hourly Pay – Hourly Pay received)** | **OT per week (OT rate missing × hours of OT)** | **NYLL OT Compensation (OT per week × number of weeks)** |
|---|---|---|---|---|---|---|
| 6/15/24 – 12/31/24 | 8.666666667 | 14 | $27.78 | $41.67 | $583.38 | $5,055.96 |
| 6/15/24 – 12/31/24 | 19.90476187 | 14 | $27.78 | $13.89 | $194.46 | $3,870.68 |
| 1/1/25 – 2/2/25 | 4.57142857142 | 14 | $27.78 | $13.89 | $194.46 | $888.96 |
| Total OT for Period 2 | | | | | | $9,815.60 |

### C. Liquidated Damages Pursuant to the NYLL

Plaintiff also seeks $72,929.32 in liquidated damages for his minimum wage and overtime claims. (*See* Samuel Decl. p. 8.) Under the FLSA and NYLL, "an employee may recover liquidated damages equal to the amount of their unpaid wages, unless the employer proves a good faith basis for believing that its underpayment of wages complied with the law." *Ochoa*, 2026 WL 796866, at *13 (citing *Perry v. High Level Dev. Contracting & Sec. LLC*, 20-CV-2180, 2022 WL 1018791, at *11 (E.D.N.Y. Mar. 16, 2022)). However, the Second Circuit "interpret[s] the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct[,]" and "[d]ouble recovery is generally disfavored." *Ochoa*, 2026 WL 796866, at *13 (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)). Instead, courts "may award damages under whichever statute allows for greater recovery." *Ochoa*, 2026 WL 796866, at *13.

As Defendant Elite defaulted and therefore made no showing it acted in good faith, Plaintiff is entitled to liquidated damages equal to the amount of unpaid wages. For the reasons stated

above, the undersigned used the NYLL to award unpaid wage and overtime compensation at the regular rate of pay awarding an hourly wage of $27.78, which is calculated by dividing the regular daily rate of pay of $250 over a nine-hour workday, rather than the $7.25 federal minimum wage under the FLSA. *See infra* Discussion III.D.ii. Applying these calculations, the undersigned respectfully recommends that Plaintiff be awarded an additional **$72,888.77** in liquidated damages under the NYLL. (Unpaid overtime wages $63,258.37 + unpaid regular wage compensation $9,630.40 = $72,888.77.) The undersigned finds that there is no basis here for double recovery under the FLSA, and, therefore, recommends no liquidated damages pursuant to the provisions of that statute.

**D. Pre-judgment Interest**

Under the NYLL, "plaintiffs are entitled to pre-judgment interest on all unpaid wages at a statutory rate of nine percent." *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 301–02 (E.D.N.Y. 2024) (citing NYLL § 198(1–a); N.Y. C.P.L.R. §§ 5001(b), 5004). Courts generally have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). However, most courts in this District "calculate simple pre-judgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Cao*, 727 F. Supp. 3d at 302 (citing *Fermin*, 93 F. Supp. 3d at 49); *see also Asfaw v. BBQ Chicken Don Alex No. 1 Corp.*, 14-CV-5665, 2015 WL 13731362, at *1 (E.D.N.Y. Aug. 26, 2015) ("The midpoint of the relevant period of plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest."). Once the midpoint has been calculated, courts multiply the statutory rate of 9% per annum by the total damages award for the plaintiff's claims. *Yunhan Duan v. Studio M Bar & Lounge Inc.*, 20-CV-2240, 2024 WL 4250262, at *14 (E.D.N.Y Jan. 31, 2024) (citing *Thompson v. Hyun Suk Park*,

18-CV-0006, 2020 WL 5822455, at *11 (E.D.N.Y. Sep. 1, 2020), *report and recommendation adopted*, 2020 WL 5820547 (E.D.N.Y. Sep. 30, 2020)).

Applying this method, the undersigned finds the midpoint date for Period 1 is January 21, 2022, and the midpoint date for Period 2 is October 9, 2024. Plaintiff's total damages accrued from the midpoint dates are $31,536.39 for Period 1 and $4,907.80 for Period 2. Prejudgment interest on those damages at a rate of nine percent per year is $2,838.28 and $441.70, respectively. Those amounts divided by 365 days in a year result in a daily interest rate of $7.78 for Period 1 and $1.21 for Period 2.

Thus, the undersigned respectfully recommends that Plaintiff should be awarded pre-judgment interest at a daily rate of **$7.78** for Period 1 and **$1.21** for Period 2 from each respective midpoint date through the entry of judgment.

### E. Post-judgment Interest

Plaintiff is entitled to post-judgment interest. *See* 28 U.S.C. § 1961 (ensuring prejudgment interest award is mandatory in any civil case where money damages are recovered). Interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). The undersigned respectfully recommends Plaintiff be awarded post-judgment interest calculated from the date the Clerk of Court enters judgment until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961(a). *Fermin*, 93 F. Supp. 3d at 52.

**F. Attorneys' Fees**

A prevailing plaintiff in a wage case pursuant to both the FLSA and NYLL may seek an award of reasonable attorneys' fees. *See* 29 U.S.C. § 216(b); NYLL § 198. Plaintiff requests $5,825.00 in attorneys' fees. (*See* Samuel Decl. ¶ 26.)

The starting point for determining the amount of attorneys' fees to be paid by defendants is calculated by the "lodestar" method, which is the "product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 156 (2d Cir. 2011). Courts have "broad discretion to determine the amount of attorneys' fees awarded." *Chen v. Oceanica Chinese Rest., Inc.*, 13-CV-4623, 2023 WL 2815742, at *18 (E.D.N.Y. Feb. 28, 2023), *report and recommendation adopted*, 2023 WL 2583856 (E.D.N.Y. Mar. 21, 2023). Courts often award costs that are "incidental and necessary to [plaintiff's] representation." *Morales v. City Scrap Metal, Inc.*, 19-CV-6682, 2022 WL 20539979, at *5 (E.D.N.Y. Nov. 16, 2022). In the Second Circuit, "requests for attorneys' fees . . . must be accompanied by contemporaneous time records that show for each attorney the date the work was done, the hours expended, and the nature of the work done." *Fermin*, 93 F. Supp. 3d at 51 (citing *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.*, 07-CV-2568, 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012)).

Here, Plaintiff retained Michael Samuel of The Samuel Law Firm in connection with this action. (*See* Samuel Decl. ¶ 1.) Plaintiff submits a billing statement describing the work Mr. Samuel conducted to represent Plaintiff in this matter. (*See id.* ¶ 26.) Mr. Samuel's affirmation states he is the founder of The Samuel Law Firm, has been licensed in the state of New York since 1993, and has litigated more than 250 FLSA wage-and-hour cases. (*See id.* ¶ 25.) He seeks an hourly rate of $500. (*See id.* ¶ 26.)

One "critical factor" in determining the reasonableness of a fee award is the degree of success obtained for the client. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020). Here, counsel has recovered over $140,000 for his client before interest, which is a considerable amount. *See infra* Conclusion. The undersigned finds this level of success weighs in favor of finding counsel's requested fees award reasonable.

The undersigned next evaluates whether Mr. Samuel's hourly rate is reasonable. The rate requested by an attorney must be "based on rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Dacas v. Duhaney*, 17-CV-3568, 2020 WL 4587343, at *3 (E.D.N.Y. June 18, 2020) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998), *report and recommendation adopted*, 17-CV-3568, 2020 WL 4586371 (E.D.N.Y. Aug. 10, 2020)). "[T]he Court may look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York" in order to determine if the hourly rate is "what a reasonable, paying client would be willing to pay." *Fermin*, 93 F. Supp. 3d at 52; *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. Of Elections*, 522 F.3d 182, 184 (2d Cir. 2008).

In conjunction with other cases in this District, the undersigned finds Mr. Samuel's hourly rate should be reduced to $450, in line with a reasonable rate for Partners in the Eastern District of New York. *See Morales v. Los Cafetales Rest. Corp.*, 21-CV-1868, 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners[.]"); *see also, e.g.*, *Yanes v. Juan & Jon Inc.*, 19-CV-0201, 2024 WL 1639932, at *2 (E.D.N.Y. Apr. 16, 2024) ("Based upon his extensive level of experience litigating FLSA cases, the Court finds Mr. Samuel should be compensated at the rate of $450.00 per hour, which is the upper limit for Partners in the Eastern District of New York.").

The undersigned next evaluates the amount of time billed by counsel. The undersigned finds the total number of hours billed by Mr. Samuel, a total of 11:39 hours, to be reasonable. *See, e.g.*, *Castiblanco v. Don Alex Peru, Inc.*, 20-CV-2235, WL 4755701, at *10 (E.D.N.Y. Aug. 20, 2021) (finding, 23.7 hours reasonable in default judgment proceeding); *Fermin*, 93 F. Supp. 3d at 52 (finding 26.4 hours expended in preparation in default judgment cases are reasonable). In view of the foregoing the undersigned respectfully recommends Plaintiff's counsel be awarded attorneys' fees totaling **$5,242.50**.

*Table 4: Attorneys' Fees*

| **Attorney** | **Number of Hours** | **Billing Rate** | **Billable Amount** |
|---|---|---|---|
| Michael Samuel | 11:39 | $450.00 | $5,242.50 |

### G. Litigation Costs

Under both the FLSA and the NYLL, "a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs." *Ochoa*, 2026 WL 796866, at *14 (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(a)). However, the requesting party cannot merely assert a certain cost was incurred, but must provide a "supporting affidavit, declaration, or documentation." *Lee v. Santiago*, 12-CV-2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sep. 10, 2013); *see also* Local Civil Rule 54.1 ("[T]he party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred' and '[b]ills for the costs claimed must be attached as exhibits.").

Plaintiff seeks $809.40 in costs, consisting of the $405.00 filing fee and $404.40 service fees. (Samuel Decl. ¶ 27.) The undersigned first recommends Plaintiff's counsel be awarded the filing fee because the undersigned takes judicial notice of the fee listed on the docket, and because

the fee requests were attached to Plaintiff's filings. (*See* Samuel Decl. Ex. 6); *see also Philips v. TraxNYC Corp.*, 21-CV-528, 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *report and recommendation adopted*, 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023) ("The Court permissibly takes judicial notice of the docket notations for paid filing fees."); *Shalto v. Bay of Bengal Kabob Corp.*, 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (filing fees are recoverable without supporting documentation if verified by the docket).

The $404.40 Plaintiff seeks to recover in connection with service fees was the amount Plaintiff paid to serve both Defendant Elite and Defendant Rubinshteyn. (*See* Samuel Decl. ¶ 27, Ex. 6.) Because Plaintiff only seeks default judgment against Defendant Elite, Plaintiff is only entitled to recover fees related to service of Defendant Elite. *See Laboratories Rivas, SRL. v. Ugly & Beauty, In.*, 11-CV-5980, 2013 WL 5977440, at *17, *report and recommendation adopted*, 11-CV-5980, 2014 WL 112397 (S.D.N.Y. Jan 8, 2014) ("Where only one defendant remains, it is reasonable to apportion the fees for the time spent preparing Plaintiff's case against all defendants."). Plaintiff submitted records showing that he paid $324.60 to serve Defendant Elite. (*See* Samuel Decl. Ex. 6.) Accordingly, the undersigned respectfully recommends Plaintiff be awarded $324.60 in service fees. Accordingly, the undersigned respectfully recommends Plaintiff be awarded a total of **$729.60** in costs ($405.00 filing fee + $324.60 service fee for Defendant Elite = $729.60).

**CONCLUSION**

The undersigned respectfully recommends the Court grant Plaintiff's Motion for Default Judgment, except as to the time-barred portion of his FLSA claim and as to NYLL Wage Theft Prevention Act claim, and awarding Plaintiff the following relief, totaling **$151,749.64** plus pre- and post-judgment interest:

(1) $9,630.40 in unpaid NYLL regular wages;

(2) $63,258.37 in unpaid NYLL overtime compensation;

(3) $72,888.77 in liquidated damages, as calculated under the NYLL;

(4) Pre-judgment interest at a rate of $7.78 per day for Period 1 and $1.21 per day for Period 2 from the respective midpoint dates up until the entry of judgment;

(5) Post-judgment interest at the federal rate up until the date of judgment;

(6) $5,242.50 in attorneys' fees;

(7) $729.60 in costs and expense

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed within 14 days of service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Any requests for an extension of time to file objections must be directed to Judge Morrison. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party [forfeits] appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue.").

**SO ORDERED.**

Dated: Brooklyn, New York
August 3, 2026

/S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York